UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER K. ALONSO,<br><br>                      Plaintiff,<br><br>v.<br><br>IMPERIAL COUNTY SHERIFF OFFICE, et al.,<br><br>                     Defendants. | Case No.:  23cv5-LR<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND DISMISSING COMPLAINT WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**<br><br>**[ECF NO. 5]** |

Pending before the Court is Defendants' "Motion to Dismiss Plaintiff's Complaint" [ECF No. 5, ECF No. 5-1 ("Mot. Dismiss")], Plaintiff's Opposition [ECF No. 13 ("Opp'n")], Defendants' Reply [ECF No. 17 ("Reply")], and Plaintiff's "Revise[d] Response" to Defendants' Motion to Dismiss [ECF No. 20 ("Sur-Reply")]. After careful review and consideration of the allegations in Plaintiff's Complaint, and for the reasons discussed in this order, the Court **GRANTS** Defendants' Motion to Dismiss, and dismisses Plaintiff's Complaint **without prejudice and with leave to amend**.

/ / /

/ / /

1

# I.  PROCEDURAL BACKGROUND

On January 3, 2023, Plaintiff Christopher Alonso, proceeding *pro se*, filed a Complaint against the Imperial County Sheriff's Office and Sheriff Deputies J. Mendoza, Soto, R. Lizzaraga, J. Guzman, Soria, Castro, M. Muniga, and Torres ("Defendants"), alleging violations of his civil rights under 42 U.S.C. § 1983.  (ECF No. 1 ("Compl.").)  On January 26, 2023, Defendants named in Plaintiff's Complaint "by and through their attorneys" filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (See Mot. Dismiss.)  Plaintiff did not oppose the Motion to Dismiss, and Defendants filed a Reply in support of their motion on February 23, 2023.  (ECF No. 7.)

On March 6, 2023, District Judge Bencivengo dismissed Plaintiff's Complaint without prejudice.  (ECF No. 8.)  Judge Bencivengo's order stated that if Plaintiff's failure to oppose the Motion to Dismiss was inadvertent, Plaintiff was to file a motion for relief from the order pursuant to Federal Rule of Civil Procedure 60, and an opposition to the Motion to Dismiss by April 3, 2023.  (Id. at 2 n.1.)

On March 15, 2023, Plaintiff filed a "Motion to Reinstate Dismissed Case" stating that he was not abandoning his Complaint.  (ECF No. 9.)  Plaintiff, however, did not submit an opposition as directed by the District Judge's March 6, 2023 Order.  (See id.; see also ECF No. 8.)  On March 20, 2023, District Judge Bencivengo issued an order requiring Plaintiff to respond to Defendants' Motion to Dismiss by April 10, 2023.  (ECF No. 10.)  The order further stated that if Plaintiff did not file an opposition by April 10, 2023, his motion to reopen the case would be denied, and the case would remain dismissed.  (Id. at 2.)

On April 3, 2023, the case was transferred from Magistrate Judge Bernard G. Skomal to Magistrate Judge Lupe Rodriguez, Jr.  (ECF No. 11.)  Plaintiff did not file an opposition to Defendants' Motion to Dismiss, and on April 18, 2023, District Judge Bencivengo denied Plaintiff's motion to reopen the case.  (ECF No. 12 at 2.)

On April 26, 2023, Plaintiff filed a document, which District Judge Bencivengo construed as a Response in Opposition to Defendants' Motion to Dismiss.  (See Opp'n; ECF No. 14.)  District Judge Bencivengo accepted Plaintiff's filing and allowed Defendants to file a reply in support of their Motion to Dismiss by May 5, 2023.  (ECF No. 14 at 2.)  On May 1, 2023, District Judge Bencivengo referred the Motion to Dismiss to this Court for a Report and Recommendation.  (See Docket.)  On May 5, 2023, Defendants timely filed a Reply in support of their Motion to Dismiss.  (See Reply.)

On June 7, 2023, this Court held a hearing on Defendants' Motion to Dismiss during which *pro se* Plaintiff and defense counsel on behalf of his clients consented to this Court's jurisdiction.  (See ECF No. 19.)  On June 13, 2023, Plaintiff filed a "Revise[d] Response" to the Motion to Dismiss, which the Court construes as Plaintiff's Sur-Reply.  (See Sur-Reply.)  On June 26, 2023, District Judge Bencivengo signed the "Consent to Jurisdiction by a United States Magistrate Judge" form, and the case was transferred to this Court.  (See ECF No. 21; see also ECF No. 22 (containing executed "Consent to Jurisdiction by a United States Magistrate Judge" forms).)

## II.  ALLEGATIONS IN PLAINTIFF'S COMPLAINT

Plaintiff's Complaint names the Imperial County Sheriff's Office and Sheriff Deputies Mendoza, Soto, Lizzarga, Guzman, Soria, Castro, Muniga, and Torres as Defendants.  (Compl. at 1–3, 7–9.)  The Complaint lists "statute 1983" and "14th amendment" as causes of action, and provides the following description: "Excessive force, False Reports, inhuman-unsanitary Conditions, Medical Neglect Malpractice."  (Id. at 12.)  Plaintiff alleges that the events giving rise to his claims occurred at the Imperial Valley Jail in El Centro, CA, and Brawley Superior Court in Brawley, CA, between October 1 and November 8, 2022.  (Id. at 4.)  Plaintiff claims that he experienced excessive force, verbal and sexual harassment by staff, deprivation of clean clothing and meals, medical neglect and malpractice, inhumane and unsanitary conditions, and problems with ventilation.  (Id. at 5.)

In a separate document entitled "Statement of Claim" attached to the Complaint, Plaintiff describes in a narrative manner the "variety of issues" he experienced and "concerns" he had during his pretrial detention.  (See ECF No. 1-2 at 1–4.)  Plaintiff alleges that he was not provided clean "orange apparel" for seventeen days after his arrival at the Imperial Valley Jail on October 1, 2022, but states that he received clean underwear, socks, and a T-shirt four days after his arrival, and then again seven days later.  (Id. at 1.)

Plaintiff further alleges that he was "deprived" of a meal in retaliation.  (See id.; Compl. at 5.)  Plaintiff alleges that he spoke to officer Lizzarga "regarding some concerns," and requested to speak to a supervisor because Lizzarga disregarded Plaintiff's concerns.  (ECF No. 1-2 at 1.)  Lizzarga grabbed Plaintiff's lunch bag, and closed and locked Plaintiff's cell door's window slot.  (Id.)  Hours later during mealtime Plaintiff's lunch was placed on the window ledge of his cell door, but he was not able to get the food because his cell door's window slot was locked.  (Id.)  Several minutes later, "the officer" returned and reopened Plaintiff's window slot so that Plaintiff could get his meal.  (Id.)  Plaintiff states that "the officer" acted in retaliation.  (Id.)

Plaintiff also alleges that he was housed in unsanitary conditions in cells that contained feces, dried urine, food crumbs, and black stains, and the jail's shower pods had insects and dried urine marks.  (Id. at 2, 5.)  One cell had a very strong odor, no toilet, and no running water.  (Id. at 2.)  Plaintiff was also placed in an "extremely cold" cell, where he "was left naked with no socks, shoes or any bodily clothing for about 4 days."  (Id.)  He did not have a mattress or blanket and complained about "hypothermia conditions."  (Id.)  On a different occasion, the AC was turned off during the night, running water was hot, and room temperature water was not available.  (Id.)  Plaintiff's request to Sergeant Muniga for "emergency services" was denied.  (Id.)

Additionally, Plaintiff was embarrassed and harassed when female officers walked inside the pods in front of jail cells while he was naked or in route to open shower areas.  (Id.)  Plaintiff was "body shamed" by several officers when they told him to

remove clothing and would only give him a set of clean clothing in exchange for dirty laundry.  (Id.)

Further, Plaintiff was deprived of sleep with "lighting torment techniques & random wake ups."  (Compl. at 5.)  Correctional officers came to Plaintiff's cell during walk throughs with beaming flashlights, and Plaintiff noticed "patterns of sleep deprivation as the lights started to go off later in the day past the bedtime hours and lights started to be turned off earlier than the expected time."  (ECF No. 1-2 at 3–4.)

Plaintiff "felt" he "was in solitary confinement and was not allowed to leave [his] cell."  (Id. at 4.)  Plaintiff's educational efforts were "obstructed" despite his requests for library access.  (Id.)  Further, most of time, the phones did not work and were "tampered with."  (Id.)  Additionally, Plaintiff's lunch had "fewer eatable items inside," milk was frequently spoiled, and his requests for extra food were not addressed.  (Id. at 2.)

Plaintiff also "observed many officers impersonate other officers by placing different name titles" on their vests.  (Id. at 3.)  Officer Guzman impersonated three different officers, officer Zuniga impersonated another officer, officer Soto impersonated officer Ortiz, and officer Chavarin impersonated officer Cervantes.  (Id.)  Additionally, several nurses impersonated doctors.  (Id.)

Plaintiff was "assaulted" by officer Mendoza who reached in through the jail door window slot and threw a lunch bag with food at Plaintiff while he was asleep on the bottom bunk.  (See ECF No. 1-2 at 1; Compl. at 5.)  Plaintiff became "very upset," cussed the officer, and requested a supervisor, but a supervisor did not respond.  (ECF No. 1-2 at 1.)

Plaintiff was also assaulted while awaiting trial at the Brawley Superior Court.  (Id. at 4.)  He was fully restrained with wrist and ankle cuffs, and was placed in a cell with three inmates.  (Id.)  Two unrestrained inmates assaulted Plaintiff with their fists, but "the officers" did not take any action with respect to "the aggressors." (Id.)

During another visit to the Brawley Superior Court, Plaintiff was "wrongfully touched by officers on duty without [his] consent."  (Id.)  Plaintiff rolled his pants to his

knees, and an officer told Plaintiff to roll down his pants if he wanted to enter the courtroom.  (Id.)  After Plaintiff refused to roll down his pants, seven officers surrounded him and rolled down his pants.  (Id.)

Further, at the Brawley Superior Court, an unidentified officer "who wore khaki pants and black polo shirt that had a Cinemark on the left chest area" and was armed with a gun, escorted Plaintiff to the medic room after Plaintiff was "assaulted at the [B]rawley jail."  (Id. at 1–2.)  The officer questioned Plaintiff, and Plaintiff asked the officer to stop because he "felt harassed."  (Id. at 2.)  The officer pulled Plaintiff's arm and shirt, choking him.  (Id.)  The assisting officer, officer Mendoza, was also "very brutal" while escorting Plaintiff to his cell.  (Id.)  The officers pinched Plaintiff's arms, pushed him down the hallway and into the wall, and tried to twist Plaintiff's wrist behind his back while he was still fully restrained.  (Id.)  During the removal of Plaintiff's handcuffs, officer Mendoza injured Plaintiff's right inner wrist, but Plaintiff did not receive any medical care for his injury.  (Id.)

Plaintiff had two other encounters with the unidentified officer several days later.  (Id.)  On one occasion, the officer walked in Plaintiff's cell and asked if he wanted his meal, and Plaintiff told the officer that he did not want the meal without knowing who the officer was.  (Id.)  The officer asked Plaintiff whether he should leave the meal on the floor.  (Id.)  Plaintiff answered in the negative, asked the officer to leave his cell, and stated that the officer was "harassing" him.  (Id.)  On another occasion, Officer Lizzarga and an unidentified officer came inside Plaintiff's cell, and Plaintiff asked them to leave, claiming that the officers were too close and "invaded" his "personal space."  (Id.)

Plaintiff was prescribed Tylenol for bruising and pain, and was told during intake that he would see a doctor, get x-rays, and undergo a medical evaluation for his injuries, but he did not receive any evaluations or testing.  (Id. at 3.)  Plaintiff received "two round pills which seemed to b[e] Tylenol" and blood pressure medication.  (Id.)  Several days later, a prescription medication Pharmaflex was added to Plaintiff's medication list.  (Id.)

Plaintiff took Tylenol once, but subsequently refused to take the medications he was provided because he had not been seen by any doctor or practitioner.  (Id.)

Plaintiff "had severe stomach problems," was constipated for over fifteen days, requested "magnesium milk," and alerted "medical staff and correctional staff via tablet through classification reports and medical reports" that he had an upcoming colonoscopy appointment, but his reports and requests were disregarded.  (Id.)  The staff "attempted" to give Plaintiff a TB test, which he refused.  (Id.)  Several days later, a female officer tried moving Plaintiff to a different cell to quarantine because he tested positive for Covid-19, but Plaintiff refused to move.  (Id.)

Finally, Plaintiff alleges that his booking statement was falsified with "[f]ake CA ID number and other false articulations," and he is "being defamed as a terrorist."  (Id.)  Plaintiff suffered mental trauma and emotional distress, and seeks $6,500,000 in damages.  (Id. at 4–5, 12.)

### III.  LEGAL STANDARD

**A.    Motion to Dismiss for Failure to State a Claim**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  A complaint "must contain sufficient allegations of underlying facts to give fair notice and

to enable the opposing party to defend itself effectively."  <u>Starr v. Baca</u>, 652 F.3d 1202,

1216 (9th Cir. 2011).

A court accepts as true a plaintiff's well-pleaded factual allegations and construes

all factual inferences in the light most favorable to the plaintiff.  <u>See</u> <u>Manzarek v. St. Paul</u>

<u>Fire & Marine Ins. Co.</u>, 519 F.3d 1025, 1031 (9th Cir. 2008).  A court, however, is not

required to accept as true legal conclusions couched as factual allegations.  <u>Iqbal</u>, 556

U.S. at 678.  When resolving a motion to dismiss for failure to state a claim, a court

considers the contents of the complaint and material properly submitted with it.  <u>Van</u>

<u>Buskirk v. Cable News Network, Inc.</u>, 284 F.3d 977, 980 (9th Cir. 2002); <u>Schneider v.</u>

<u>Cal. Dept. of Corr.</u>, 151 F.3d 1194, 1197 (9th Cir. 1998) (internal citations and internal

quotation marks omitted) ("Ordinarily, the face of the . . . complaint, and the exhibits

attached thereto, would control the Rule 12(b)(6) inquiry.").

**B.    <u>Standards Applicable to <em>Pro Se</em> Litigants</u>**

When a plaintiff appears <em>pro se</em>, a court must liberally construe the pleadings.  <u>See</u>

<u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007); <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th

Cir. 2002).  The rule of liberal construction is "particularly important" in civil rights

cases.  <u>See</u> <u>Hebbe v. Pliler</u>, 627 F.3d 338, 342 (9th Cir. 2010); <u>Ferdik v. Bonzelet</u>, 963

F.2d 1258, 1261 (9th Cir. 1992).  When liberally construing a <em>pro se</em> civil rights

complaint, a court is not permitted to "supply essential elements of the claim that were

not initially pled."  <u>Ivey v. Bd. of Regents of the Univ. of Alaska</u>, 673 F.2d 266, 268 (9th

Cir. 1982).  "The plaintiff must allege with at least some degree of particularity overt acts

which defendants engaged in that support the plaintiff's claim."  <u>Jones v. Cmty. Redev.</u>

<u>Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984) (citations and internal quotation marks

omitted).

A court should allow a <em>pro se</em> litigant to amend his complaint, "unless the pleading

'could not possibly be cured by the allegation of other facts.'"  <u>Ramirez v. Galaza</u>, 334

F.3d 850, 861 (9th Cir. 2003) (quoting <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir.

2000)).  "[B]efore dismissing a pro se complaint the district court must provide the

litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." <u>Ferdik</u>, 963 F.2d at 1261.  A court "should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" <u>Rosati v. Igbinoso</u>, 791 F.3d 1037, 1039 (9th Cir. 2015) (quoting <u>Akhtar v. Mesa</u>, 698 F.3d 1202, 1212 (9th Cir. 2012)).  However, where an amendment of a *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate.  <u>See</u> <u>James v. Giles</u>, 221 F.3d 1074, 1077 (9th Cir. 2000).

## C.  <u>Stating a Claim Under 42 U.S.C. § 1983</u>

To state a claim under 42 U.S.C. § 1983, a plaintiff must plausibly allege that (1) the acts of defendants (2) taken under color of state law (3) deprived him of his federal rights, privileges or immunities and (4) caused him damage.  42 U.S.C. § 1983; <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1163–64 (9th Cir. 2005).  To prevail on a § 1983 claim, "a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of the defendant."  <u>Harris v. Schriro</u>, 652 F. Supp. 2d 1024, 1034 (D. Ariz. 2009) (citing <u>Rizzo v. Goode</u>, 423 U.S. 362, 371–72 (1976)).

## IV.  DISCUSSION

Defendants move the Court to dismiss Plaintiff's Complaint without leave to amend.  (Mot. Dismiss at 2, 10.)  They argue that Defendant Imperial County Sheriff's Office is not a "person" under 42 U.S.C. § 1983 and should be dismissed with prejudice, and Plaintiff failed to adequately plead a claim against individual Defendants.  (<u>Id.</u> at 7–10.)  Defendants maintain that Plaintiff's Complaint fails to state a claim upon which relief can be granted and fails to state a legal cognizable theory.  (<u>Id.</u> at 10.)

In his Opposition, Plaintiff lists the following issues: (1) "Deprivation of [his] Liberty [in] violation of [his] 14th amendment right medical negligence"; (2) "Excessive Force Statute 1983"; and (3) "Report Error.  Automatic dismissal.  (booking statement is also falsified with fake CA ID number and other false articulations.)."  (Opp'n at 1.)

Plaintiff states that he "agree[s] with the Superior Court's decision, but he "disagrees" with the law enforcement decision to arrest him in violation of his First Amendment rights.[1]  (Id. at 6.)  Plaintiff also asks the Court to "affirm and keep the dismissal order" of the Imperial County Superior Court Case No. JCF006186, in which "[H]onorable Bermudez dropped allegation counts due to false arrest and false allegations as video evidence showed no threats were made by audio footage review."  (Id.)

Defendants reply that Plaintiff conflates issues from his criminal proceeding in state court with issues raised in the instant civil action filed in federal court.  (Reply at 4–5.)  Defendants further assert that the Opposition contains facts not pled in Plaintiff's Complaint and ask the Court to disregard those facts, including "all facts asserted on pages 6–7 of Plaintiff's Opposition."  (Id. at 5.)  Defendants also maintain that Plaintiff's Fourteenth Amendment claims are not well-pled and move the Court to dismiss Plaintiff's Complaint without leave to amend.  (Id. at 5–6.)

Plaintiff's Sur-Reply restates the facts listed in his Opposition.  (See Sur-Reply at 2–5; see also Opp'n at 1–6.)  Plaintiff states that the instant action is brought under 42 U.S.C. § 1983 and he "[c]laims that defendants' actions deprived him of Fourteenth Amendment due process and equal protection of the law."  (Sur-Reply at 5.)  Plaintiff asks the Court to "affirm & keep the Superior Court's final judgement."  (Id. at 6.)

/ / /

/ / /

---

[1]  Plaintiff explains that El Centro Police Department "ma[de] contact" with him at his residence regarding an incident at Seven Eleven store, during which he "was refused service" and exchanged profanities with the store clerk.  (Opp'n at 6.)  Plaintiff states that police officers identified themselves, but did not state what crime he had committed, and, as a result, he "chose not to cooperate."  (Id.)  Plaintiff claims that, contrary to Defendants' contentions, he did not make terrorist threats; rather, he exercised his First Amendment right to advise the store clerk that she provided poor service.  (Id.)

**A.     Facts Raised in Plaintiff's Opposition and Sur-Reply**

The Court initially addresses Defendants' argument that because Plaintiff's Opposition contains facts that Plaintiff did not plead in his Complaint, the Court should disregard those facts, including "all facts asserted on pages 6–7 of Plaintiff's Opposition." (See Reply at 5.)  Plaintiff's Opposition and Sur-Reply contain additional facts, which were not alleged in Plaintiff's Complaint. (See Opp'n at 6–7; Sur-Reply at 5.)  "In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (quoting Schneider, 151 F.3d at 1197 (9th Cir. 1998)); see also Turner v. Cty. of San Diego, Case No.: 17cv285-WQH-MDD, 2017 WL 2908807, at *3 (S.D. Cal. July 7, 2017) ("[A] court cannot consider as allegations facts [p]laintiff asserts for the first time in his opposition.").  However, a court may consider "[f]acts raised for the first time in plaintiff's opposition papers . . . in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice." Broam, 320 F.3d at 1026 n.2 (quoting Orion Tire Corp. v. Goodyear Tire & Rubber Co., 268 F.3d 1133, 1137–38 (9th Cir. 2001)).  Accordingly, although the Court cannot consider new facts listed in Plaintiff's Opposition in determining whether Plaintiff's Complaint states a claim against Defendants, the Court will consider those facts in determining whether to grant leave to amend or to dismiss the Complaint with or without prejudice. See id.

**B.     Monell Municipal Liability**

Defendants argue that to the extent Plaintiff is attempting to establish municipal liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978), his Complaint fails to state a claim upon which relief can be granted. (Mot. Dismiss at 8.)  Defendants assert that Plaintiff fails to mention any policy that amounted to deliberate indifference to his rights and merely lists facts related to his incarceration. (Id. at 8–9.)  Defendants argue that the Imperial County Sheriff's Office is "not a correct party to a § 1983 action" and should be dismissed with prejudice. (Id. at 9.)  Plaintiff does not make any

arguments regarding municipal liability in his Opposition and Sur-Reply.  (See Opp'n; Sur-Reply.)

Plaintiff's Complaint names the Imperial County Sheriff's Office.  (See Compl.) In its recent decision, the Ninth Circuit clarified that municipal police departments and sheriff's departments are "persons" within the meaning of 42 U.S.C. § 1983, and are therefore proper defendants.  See Duarte v. City of Stockton, 60 F.4th 566, 574 (9th Cir. 2023); see also Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1138 (9th Cir. 2012) ("To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law.").  Therefore, the Imperial County Sheriff's Office is a "person" within the meaning of 42 U.S.C. § 1983, and a proper Defendant in this action.  See id.; see also Crossley v. Tulare Cnty. Sheriff, 1:21-cv-01758-GSA-PC, 2023 WL 3794868, at *4 (E.D. Cal. June 2, 2023) (citing Duarte, 60 F.4th at 574, and concluding that Tulare County Sheriff's Department was a proper defendant); Johnson v. Solano Cnty. Sherriff, No. 2:22-cv-02061-DAD-CKD PS, 2023 WL 2278409, at *4 (E.D. Cal. Feb. 28, 2023) (citing Duarte, 60 F.4th at 574, and concluding that Solano County Sheriff's Department was proper defendant).

A municipality or local government unit can be held liable under 42 U.S.C. § 1983 if the allegedly unconstitutional actions of its employees were taken pursuant to a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Monell, 436 U.S. at 690.  A municipality can also be liable for adopting an unconstitutional custom, even if such custom has not received formal approval through the "body's official decision-making channels."  Id. at 690–91.  However, a municipal entity cannot be held liable under 42 U.S.C. § 1983 simply because it employs someone who has allegedly acted unlawfully.  Id. at 691, 694.  A plaintiff must show that: (1) he was deprived of a constitutional right; (2) the municipality has a policy, custom or practice which amounted to deliberate indifference to that constitutional right; and (3) the policy, custom, or practice was the moving force behind the constitutional

violation.  <u>Dougherty v. City of Covina</u>, 654 F.3d 892, 900–01 (9th Cir. 2011) (citing <u>Monell</u>, 436 U.S. at 694).  A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  <u>Fogel v. Collins</u>, 531 F.3d 824, 834 (9th Cir. 2008).  A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law."  <u>St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988) (citation and internal quotation marks omitted).  "[P]roof of a single incident of unconstitutional activity" or even a series of "isolated or sporadic incidents" will not give rise to § 1983 municipal liability.  <u>Grant v. Cnty. of Los Angeles</u>, 772 F.3d 608, 618 (9th Cir. 2014).

In this case, Plaintiff has not alleged or identified in his Complaint any policy, custom, or practice by the Imperial County's Sheriff's Office that amounted to deliberate indifference to his constitutional rights.  <u>See</u> <u>Dougherty</u>, 654 F.3d at 900–01; <u>Monell</u>, 436 U.S. at 694.  Further, the Complaint does not allege that any policy, custom or practice was the "moving force" behind the constitutional violation.  <u>See id.</u>  The Court therefore dismisses Plaintiff's <u>Monell</u> claim for failure to state a claim upon which relief may be granted.

## C.   **Fourteenth Amendment Claims**

Plaintiff's Complaint appears to allege that Defendants violated his Fourteenth Amendment rights by (1) using excessive force and failing to protect him from violence, (2) providing inadequate medical care, and (3) providing inadequate conditions of confinement.  (<u>See</u> Compl.; ECF No. 1-2.)  "Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause."  <u>Castro v. Cnty. of L.A.</u>, 833 F.3d 1060, 1067–68 (9th Cir. 2016); <u>see also</u> <u>Mendiola-Martinez v. Arpaio</u>, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016) ("Eighth Amendment protections apply only once a prisoner has been convicted of a crime, while

pretrial detainees are entitled to the potentially more expansive protections of the Due Process Clause of the Fourteenth Amendment."); <u>Pierce v. Cnty. of Orange</u>, 526 F.3d 1190, 1205 (9th Cir. 2008) (providing that pretrial detainees are protected against jail conditions or restrictions that "amount to punishment" by the Fourteenth Amendment's Due Process Clause).

The Fourteenth Amendment "prohibits *all* punishment of *pretrial detainees*." <u>Norbert v. City & Cnty. of S.F.</u>, 10 F.4th 918, 928 (9th Cir. 2021) (quoting <u>Vazquez v. Cnty. of Kern</u>, 949 F.3d 1153, 1163–64 (9th Cir. 2020)).  For a "particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee." <u>Id.</u> (quoting <u>Demery v. Arpaio</u>, 378 F.3d 1020, 1029 (9th Cir. 2004)). "Harm" under the first prong must "significantly exceed, or be independent of, the inherent discomforts of confinement." <u>Demery</u>, 378 F.3d at 1030 (citing <u>Bell</u>, 441 U.S. at 537).

During the events at issue in this action, Plaintiff was awaiting trial in his underlying state court proceedings.  (<u>See</u> Compl.)  Because Plaintiff was a pretrial detainee, and not a convicted inmate, the Fourteenth Amendment governs his claims.

### 1. Excessive force/failure to protect

To the extent Plaintiff alleges that Defendants violated his Fourteenth Amendment rights by using excessive force, "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." <u>Kingsley v. Hendrickson</u>, 576 U.S. 389, 397–98 (2015) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 395 n.10 (1989)). To state an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." <u>Id.</u> at 396–97. Objective reasonableness turns on the "facts and circumstances of the particular case." <u>See id.</u> at 397 (quoting <u>Graham</u>, 490 U.S. at 396).  A court must consider "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in th[e]

23cv5-LR

judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." Id. (quoting Bell v. Wolfish, 441 U.S. 520, 540, 547 (1979) (internal quotation marks omitted)). Relevant considerations also include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id. at 397.

In this case, Plaintiff alleges that during his pretrial detention at the Imperial Valley Jail, officer Mendoza "assaulted" him when he threw a lunch bag with food at Plaintiff. (See ECF No. 1-2 at 1; Compl. at 5.) Plaintiff further alleges that he was "wrongfully touched by officers on duty without [his] consent" at the Brawley Superior Court when the officers rolled down Plaintiff's pants. (See ECF No. 1-2 at 4.) Additionally, Plaintiff's Complaint alleges that an unidentified officer and officer Mendoza used excessive force when they transported Plaintiff from the Brawley Superior Court back to his cell. (See id. at 2.) Plaintiff's Complaint only identifies Defendant Mendoza and generally claims that correctional officers used excessive force against him. The Complaint also does not describe the extent of Plaintiff's injuries and does not allege any other facts relevant to his excessive force claim. See Kingsley, 576 U.S. at 397 (providing that relevant considerations include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."); see also Plunk v. Tulare Cnty., Case No.: 1:15-cv-01820-SAB (PC), 2016 WL 8731360, at *3 (E.D. Cal. Feb. 5, 2016) (dismissing plaintiff's excessive force claim under the Fourteenth Amendment where plaintiff's complaint "d[id] not explain what led to the incident [at issue], where the incident took place, what if any reasons were given by defendants for their actions, whether defendants engaged in other

conduct to defuse the use of force, or why [p]laintiff believe[d] the use of force was objectively unreasonable.").

Plaintiff also alleges that he was assaulted by two inmates at the Brawley Superior Court, and "the officers" did not take any action with respect to "the aggressors." (ECF No. 1-2 at 4.)  Pretrial detained have a due process right to be free from violence from other inmates.  See Castro, 833 F.3d at 1067.  The elements of a Fourteenth Amendment failure-to-protect claim against an individual officer are:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

Id. at 1071.  To satisfy the third element, "defendant's conduct must be objectively unreasonable."  Id. (quoting Kingsley, 576 U.S. at 397).

As currently pled, Plaintiff's Complaint does not identify any Defendant who allegedly failed to protect Plaintiff from the inmate attack at the Brawley Superior Court. The Complaint also does not allege that Defendants were aware that the unrestrained inmates might attack Plaintiff, yet made an intentional decision to place Plaintiff in the same cell with those inmates.  Further, the Complaint fails to sufficiently allege facts showing that that by being temporarily placed in the cell with other inmates at the Brawley Superior court, Plaintiff was subjected to a substantial risk of suffering serious harm, that Defendants failed to take reasonable steps to abate that risk, that a reasonable deputy in Defendants' position would have appreciated a high risk of harm under the

circumstances, and that by not taking such measures, Defendants caused Plaintiff's injuries.  See Castro, 833 F.3d at 1071.  Plaintiff's conclusory allegations are not sufficient to state a plausible Fourteenth Amendment claim.  See Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  Therefore, Plaintiff has failed to state a cognizable claim against Defendants for excessive force and failure to protect in violation of the Fourteenth Amendment.

## 2. Inadequate medical care

To the extent Plaintiff is attempting to allege that Defendants failed to provide adequate medical care, "claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard." Gordon v. Cnty. of Orange, 888 F.3d 1118, 1124–25 (9th Cir. 2018) (emphasis added) (quoting Castro, 833F.3d at 1070)).  In Gordon, the Ninth Circuit identified the following elements of a pretrial detainee's medical care claim against an individual defendant under the Due Process Clause of the Fourteenth Amendment:

> (i) the defendant made an intentional decision with respect to the conditions under which [plaintiff] was confined; (ii) those conditions put [plaintiff] at substantial risk of suffering serious harm; (iii) [each] defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, [each] defendant caused [plaintiff's] injuries.

Id. at 1125.

Plaintiff alleges in his Complaint that during his pretrial detention he was prescribed Tylenol for pain and bruising, blood pressure medication, and Pharmaplex, but questions whether those medications were appropriate, and states that he refused to take the medications.  (See ECF No. 1-2 at 3.)  Plaintiff also alleges that he refused to take a TB test and to be moved to a different cell for Covid-19 quarantine purposes.  (See id.)

Further, Plaintiff appears to allege that he should have received medical evaluations and diagnostic testing while in pretrial custody.  (See id.)  "[A]llegations of differences of opinion over proper medical care, inadequate medical treatment, medical malpractice, or even gross negligence by themselves do not rise to the level of . . . Fourteenth Amendment violation."  Patton v. Rey, Case No.: 3:22-cv-02028-CAB-MDD, 2023 WL 218973, at *5 (S.D. Cal. Jan. 17, 2023) (citing Farmer v. Brennan, 511 U.S. 825, 835 (1994)) ("[N]egligen[ce] in diagnosing or treating a medical condition" does not amount to deliberate indifference)); see also Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (a disagreement over the necessity or extent of medical treatment does not show deliberate indifference).

Plaintiff's Complaint does not describe with sufficient specificity any facts establishing that Plaintiff had a serious medical need, injury or illness.  The Complaint also does not identify any individual Defendant who knew of and deliberately ignored such medical condition or need for treatment.  Further, Plaintiff does not sufficiently allege that his medical need, injury or condition put him at substantial risk of suffering serious harm, that Defendants did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved, and that by not taking such measures, each Defendant caused Plaintiff's injuries.  See Gordon, 888 F.3d at 1125.  Additionally, although Plaintiff generally alleges that he submitted complaints concerning injuries to his wrists due to improper handcuffing, as well as improper temperature in his cell, (see ECF No. 1-2 at 2–3), there are no factual allegations in his Complaint regarding who those requests were directed to or any other facts plausibly alleging that any individual Defendant was aware of his medical needs.  Based on these facts, the Court finds that the Complaint does not state a claim for denial of medical care in violation of Plaintiff's Fourteenth Amendment Due Process rights.

/ / /

/ / /

### 3. Conditions of confinement

Finally, to the extent Plaintiff is attempting to allege that Defendants violated his Fourteenth Amendment rights by providing inadequate conditions of confinement, to state a claim for unconstitutional conditions of confinement, a pre-trial detainee must plausibly allege that:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

Gordon, 888 F.3d at 1125 (quoting Castro, 833 F.3d at 1071); see also Carroll v. San Diego Cnty. Jail Sheriff, Case No.: 3:19-cv-02073-AJB-NLS, 2020 WL 4336091, at *6–7 (S.D. Cal. July 28, 2020) (stating that the Ninth Circuit's reasoning in Gordon applies to conditions of confinement claims).

Plaintiff's Complaint alleges that he was housed in unsanitary conditions in cells that contained feces, dried urine, food crumbs, and black stains, the temperature in some of the cells was too cold or too hot, and the jail's shower pods had insects and dried urine marks.  (See ECF No. 1-2 at 1–3.)  Additionally, Plaintiff claims that he was not provided clean clothing and access to showers on a regular basis, experienced delays in receiving meals and the meals lacked in quality and variety, had limited access to phones, and was sleep-deprived.  (See id. at 1, 4.)  As currently drafted, the Complaint does not plausibly allege that any Defendants named in the Complaint were responsible for, or aware of, the conditions in the cells where Plaintiff was housed, the conditions in the showers, or that Plaintiff was not provided clean clothing.  Further, the allegations in the Complaint lack detail with respect to how the conditions affected Plaintiff.  Plaintiff does not allege that any named Defendant made an intentional decision to place him in a cell with the alleged conditions, nor explains how Defendants subjected him to a substantial risk of serious

23cv5-LR

harm.  The Complaint also fails to allege that any Defendant did not take reasonable available measures to abate any alleged risk to Plaintiff, and that by not taking such measures, each Defendant caused Plaintiff's injuries.  See Gordon, 888 F.3d at 1125.

Finally, to the extent Plaintiff alleges that he was deprived access to law library, prisoners do not have a constitutional right to access a law library.  See Lewis v. Casey, 518 U.S. 343, 351 (1996) (stating that inmates lack "an abstract, freestanding right to a law library or legal assistance").  Further, Plaintiff has failed to allege facts sufficient to describe how any action by any Defendant impaired his ability to visit the law library, or how he was harmed.

Accordingly, Plaintiff's Complaint fails to allege sufficient facts to establish that he was subjected to conditions of confinement that rise to the level of a constitutional violation.  See Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570 ("[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").  The Court therefore finds that Plaintiff's Complaint does not state a claim that Defendants violated his Fourteenth Amendment right by providing inadequate conditions of confinement.

**D.   First Amendment Retaliation Claim**

Plaintiff's Complaint also appears to allege that officer Lizzarga delayed providing a meal to Plaintiff in retaliation.  (See ECF No. 1-2 at 1.)  Pretrial detainees have a constitutional right to file grievances against prison officials and to be free from retaliation for doing so.  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567–68 (2005).  "The adverse action need not be an independent constitutional violation."  Id. (citing Pratt v. Rowland,

65 F.3d 802, 806 (9th Cir. 1995)); <u>see also</u> <u>Gomez v. Vernon</u>, 255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights.").  A plaintiff, however, must allege a retaliatory motive—that is, a causal connection between the adverse action and his protected conduct.  <u>Watison</u>, 668 F.3d at 1114.

In this case, Plaintiff alleges that he spoke to officer Lizzarga "regarding some concerns," and requested to speak to a supervisor because Lizzarga disregarded Plaintiff's complaints.  (<u>See</u> <u>id.</u>)  Plaintiff then makes vague and conclusory allegations that Defendant Lizzarga retaliated against Plaintiff.  The Complaint does not mention the First Amendment, and does not allege that Plaintiff's First Amendment rights were chilled.  The Complaint also fails to allege that Defendant Lizzarga's actions did not reasonably advance a legitimate correctional goal.  Plaintiff's Complaint fails to allege the elements of a First Amendment retaliation claim and fails to state a retaliation claim against Defendant Lizzarga.  <u>See</u> <u>Rhodes</u>, 408 F.3d at 567–68; <u>see also</u> <u>Hentz v. Ceniga</u>, 402 F. App'x 214, 215 (9th Cir. 2010) (holding conclusory allegations of retaliation are insufficient to state a claim).

**E.   <u>Leave to Amend</u>**

Because it is not clear that Plaintiff cannot allege facts to support his claim, and because Plaintiff is proceeding *pro se*, the Court **GRANTS** Plaintiff leave to amend his pleading.  <u>See</u> <u>Ramirez</u>, 334 F.3d at 861 (court must grant a *pro se* plaintiff leave to amend his complaint "unless the pleading 'could not possibly be cured by the allegation of other facts'") (quoting <u>Lopez</u>, 203 F.3d at 1130); <u>Ferdik</u>, 963 F.2d at 1261 ("[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively.").  In the amended complaint, Plaintiff must describe the constitutional right he believes was violated, name the person who violated the right, state exactly what that individual did or failed to do, state how the action or inaction of that person is connected to the violation of Plaintiff's constitutional rights, as well as

what specific injury Plaintiff suffered because of that person's conduct.  See Hinkley v. Vail, No. C12–5969 RBL/KLS, 2012 WL 6012800, at *2 (W.D. Wash. Dec. 3, 2012); see also Harris, 652 F. Supp. 2d at 1034 (to prevail on a § 1983 claim, "a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of the defendant.").  Plaintiff must repeat this process for each person he names as a defendant. Plaintiff should carefully review the standards set forth in this order and amend only those claims that he believes, in good faith, are cognizable.

## V.      CONCLUSION

For the foregoing reasons, the Court **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court further **GRANTS** Plaintiff leave to file an amended complaint that cures all noted pleading deficiencies on or before **September 25, 2023**.  If Plaintiff chooses to file an amended complaint, the amended complaint must be complete by itself without reference to Plaintiff's original Complaint.  Any defendants not named and claims not re-alleged in Plaintiff's amended complaint will be considered waived. See S.D. Cal. CivLR 15.1; Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1546 (9th Cir. 1989) (providing that "an amended pleading supersedes the original"); Lacey v. Maricopa Cnty., 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be considered "waived if not repled").

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

If Plaintiff fails to file an amended complaint within the time provided, the Court will enter a final order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted and his failure to prosecute in compliance with a court order requiring amendment.  See Lira v. Herrera, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated:  August 9, 2023

_____

Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge