1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11   CHRISTOPHER K. ALONSO,              Case No.:  23cv5-LR

12                          Plaintiff,   **ORDER GRANTING DEFENDANTS'**
                                         **MOTION TO DISMISS**
13   v.                                  **PLAINTIFF'S AMENDED**
                                         **COMPLAINT**
14   IMPERIAL COUNTY SHERIFF
     DEPARTMENT, et al.,                 **[ECF NO. 32]**
15
                           Defendants.
16

17

18

19        Pending before the Court is Defendants' "Motion to Dismiss Plaintiff's Amended

20   Complaint" [ECF No. 32, ECF No. 32-1 ("Mot. Dismiss")], Plaintiff's Opposition [ECF

21   No. 34 ("Opp'n")[1]], and Defendants' Reply [ECF No. 36 ("Reply")].  After careful

22   review and consideration of the allegations in Plaintiff's Amended Complaint, and for the

23   reasons discussed in this order, the Court **GRANTS** Defendants' Motion to Dismiss.

24

25

26   _____

27   [1]  Plaintiff labeled this document as "Amended Reply."  (ECF No. 34 at 1.)  To the extent Plaintiff
     intended this document to serve as his opposition to Defendants' Motion to Dismiss Plaintiff's Amended
28   Complaint, the Court will construe the filing as Plaintiff's Opposition.

# I. PROCEDURAL BACKGROUND

On January 3, 2023, Plaintiff Christopher Alonso, proceeding *pro se*, filed a Complaint against the Imperial County Sheriff's Office and Sheriff Deputies J. Mendoza, Soto, R. Lizzarga, J. Guzman, Soria, Castro, M. Muniga, and Torres, alleging violations of his civil rights under 42 U.S.C. § 1983. (ECF No. 1.) On January 26, 2023, Defendants named in Plaintiff's Complaint "by and through their attorneys" filed a Motion to Dismiss the Complaint ("First Motion to Dismiss") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (See ECF No. 5.) Plaintiff did not oppose the First Motion to Dismiss, and Defendants filed a Reply in support of their motion on February 23, 2023. (ECF No. 7.)

On March 6, 2023, District Judge Bencivengo dismissed Plaintiff's Complaint without prejudice. (ECF No. 8.) Judge Bencivengo's order stated that if Plaintiff's failure to oppose the First Motion to Dismiss was inadvertent, Plaintiff was to file a motion for relief from the order pursuant to Federal Rule of Civil Procedure 60, and an opposition to the Motion to Dismiss by April 3, 2023. (Id. at 2 n.1.)

On March 15, 2023, Plaintiff filed a "Motion to Reinstate Dismissed Case" stating that he was not abandoning his Complaint, but did not submit an opposition as directed by the District Judge's March 6, 2023 Order. (See ECF No. 9; see also ECF No. 8.) On March 20, 2023, District Judge Bencivengo issued an order requiring Plaintiff to respond to Defendants' First Motion to Dismiss by April 10, 2023. (ECF No. 10.) The order further stated that if Plaintiff did not file an opposition by April 10, 2023, his motion to reopen the case would be denied, and the case would remain dismissed. (Id. at 2.)

On April 3, 2023, the case was transferred from Magistrate Judge Bernard G. Skomal to Magistrate Judge Lupe Rodriguez, Jr. (ECF No. 11.) Plaintiff did not file an opposition to Defendants' First Motion to Dismiss, and on April 18, 2023, District Judge Bencivengo denied Plaintiff's motion to reopen the case. (ECF No. 12 at 2.)

On April 26, 2023, Plaintiff filed a document, which District Judge Bencivengo construed as a Response in Opposition to Defendants' First Motion to Dismiss. (See

ECF Nos. 13 & 14.)  District Judge Bencivengo accepted Plaintiff's filing and allowed Defendants to file a reply in support of their First Motion to Dismiss by May 5, 2023. (ECF No. 14 at 2.)  On May 1, 2023, District Judge Bencivengo referred the First Motion to Dismiss to this Court for a Report and Recommendation.  (See Docket.)  On May 5, 2023, Defendants timely filed a Reply in support of their First Motion to Dismiss.  (See ECF No. 17.)

On June 7, 2023, this Court held a hearing on Defendants' First Motion to Dismiss, during which *pro se* Plaintiff and defense counsel on behalf of his clients consented to this Court's jurisdiction.  (See ECF No. 19.)  On June 13, 2023, Plaintiff filed a "Revise[d] Response" to the First Motion to Dismiss, which the Court construed as Plaintiff's Sur-Reply.  (See ECF No. 20.)  On June 26, 2023, District Judge Bencivengo signed the "Consent to Jurisdiction by a United States Magistrate Judge" form, and the case was transferred to this Court.  (See ECF No. 21; see also ECF No. 22 (containing executed "Consent to Jurisdiction by a United States Magistrate Judge" forms).)  On August 9, 2023, this Court issued an Order Granting Defendants' First Motion to Dismiss Plaintiff's Complaint and Dismissing Complaint Without Prejudice and With Leave to Amend.  (ECF No. 25.)

On October 12, 2023, Plaintiff filed an Amended Complaint against the Imperial County Sheriff's Department and Sheriff Deputies R. Lizzarga, J. Guzman, Soto/Joto,[2] Torres, R. Alvarez, Soria, Mendoza, Gutierrez,[3] Muniga,[4] and Castro ("Defendants"),

---

[2]  The Court notes that Plaintiff's Amended Complaint references Soto/Joto as a singular "Defendant." (See ECF No. 29 ("Am. Compl.") at 3.)  Defendants' Motion to Dismiss indicates that the correct spelling of this Defendant's last name is "Soto."  (See Mot. Dismiss (emphasis added).)

[3]  Plaintiff's Amended Complaint spells Defendant's last name as "Guiterrez."  (See Am. Compl. at 1–2, 5–6.)  Defendants' Motion to Dismiss indicates that the correct spelling of this Defendant's last name is "Gutierrez."  (See Mot. Dismiss (emphasis added).)

[4]  Plaintiff's Amended Complaint spells Defendant's last name as "Mungia."  (See Am. Compl. at 1, 3, 7.)  Defendants' Motion to Dismiss indicates that the correct spelling of this Defendant's last name is "Muniga."  (See Mot. Dismiss (emphasis added).)

alleging violations of his civil rights under 42 U.S.C. § 1983.  (ECF No. 29 ("Am. Compl.").)  On October 26, 2023, Defendants Imperial County Sheriff's Office, and Sheriff Deputies R. Lizzarga, J. Guzman, Soto, Torres, R. Alvarez, Soria, J. Mendoza, Gutierrez, M. Muniga, Mendoza Jr., Hernandez and Castro "by and through their attorneys" filed the instant Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (See Mot. Dismiss.)

On October 27, 2023, Plaintiff filed a document captioned "Amended reply." (ECF No. 34.)  On January 8, 2024, Defendants timely filed a Reply in support of their Motion to Dismiss.  (See Reply; see also ECF No. 35.)

On February 28, 2024, the Court held a hearing on Defendants' Motion to Dismiss. (See ECF No. 41.)  *Pro se* Plaintiff did not appear at the hearing.  (See id.)  During the hearing, the Court asked defense counsel whether all named Defendants, including new Defendants Plaintiff named in his Amended Complaint, have consented to this Court's jurisdiction, and defense counsel stated on the record that all Defendants named in Plaintiff's Amended Complaint have consented to this Court's jurisdiction.

## II.  ALLEGATIONS IN PLAINTIFF'S AMENDED COMPLAINT

Plaintiff's Amended Complaint names the Imperial County Sheriff's Department and Sheriff Deputies R. Lizzarga, J. Guzman, Soto, Torres, R. Alvarez, Soria, Mendoza, Gutierrez, Muniga, and Castro as Defendants.  (Am. Compl. at 1.)  Plaintiff alleges that the events giving rise to his claims occurred at the Imperial Valley Jail in El Centro, CA, and Brawley Superior Court in Brawley, CA, between October 1, 2022, and November 2, 2022.  (See id.)  The Amended Complaint alleges violations of Plaintiff's Fourth, Eighth,[5] and Fourteenth Amendment rights, as well as retaliation.  (See id.)

---

[5]  The Court notes that Plaintiff's Amended Complaint alleges violations of his Eighth Amendment rights.  (Am. Compl. at 3–4, 6.)  However, during the events at issue in this action, Plaintiff was awaiting trial in his state court proceedings.  (See Am. Compl.)  Because Plaintiff was a pretrial detainee, and not a convicted inmate, the Fourteenth Amendment governs his claims.  See Castro v. Cnty. of L.A., 833 F.3d 1060, 1067–68 (9th Cir. 2016) ("Inmates who sue prison officials for injuries

Plaintiff alleges that numerous Defendants violated his Fourth Amendment rights. (See id. at 2–3, 5.)  Specifically, Plaintiff states that Defendant Torres woke him up while he was "half dressed" to "intimidate" him, and Plaintiff told Torres that he was uncomfortable because Torres was a female officer.  (Id. at 5.)  Plaintiff further alleges that Torres unlocked Plaintiff's cell and "acted as if she was going to enter" Plaintiff's "private protected living area," but then Torres stepped aside and Alvarez entered the cell.  (Id.)  Plaintiff alleges that he "was in fear of his life."  (Id.)  He further claims that Defendants Torres and Alvarez violated his privacy rights by entering his cell without probable cause and coming within "close contact of [him]" while he was undressed.  (Id. at 2.)  Plaintiff also states that if Defendant Alvarez needed to communicate with Plaintiff, Alvarez could have done it through the door.  (Id.)

Further, Plaintiff alleges that Defendant Gutierrez entered his cell without probable cause despite Plaintiff's request that Gutierrez "keep his distance" and step out.  (Id. at 2, 5.)  Plaintiff states that Gutierrez delivered a meal to his cell, despite Plaintiff's request that Gutierrez "stop communicating or [m]aking contact [with] [P]laintiff."  (Id. at 5.)  Plaintiff alleges that Gutierrez entered his cell and "invad[ed] [P]laintiff's personal space," and contends that he was "concerned" and "intimidated."  (Id.)

Plaintiff also alleges that Defendant Soto conducted unwarranted searches to "intimidate" Plaintiff and "look[ed] to fight Plaintiff" by opening his cell door after Plaintiff exercised his First Amendment right.  (Id. at 3.)  Additionally, Plaintiff alleges that when he was held at the Brawley Superior Court awaiting his court appearance,

---

suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause."); Mendiola-Martinez v. Arpaio, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016) ("Eighth Amendment protections apply only once a prisoner has been convicted of a crime, while pretrial detainees are entitled to the potentially more expansive protections of the Due Process Clause of the Fourteenth Amendment."); Pierce v. Cnty. of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008) (providing that pretrial detainees are protected against jail conditions or restrictions that "amount to punishment" by the Fourteenth Amendment's Due Process Clause).

Defendants Castro and Soria wrongfully touched him for a dress code violation.  (Id. at 2.)

With respect to the Fourteenth Amendment, Plaintiff alleges violations by multiple Defendants.  He states that he "had done nothing wrong," but Defendants Mendoza and Gutierrez grabbed him, and "forcefully pushed pinched" him and "force[d]" him to another pod cell.  (Id. at 6.)  Plaintiff further claims that Defendant Mendoza used excessive force by "pulling and yanking" Plaintiff's chain shackles, and "[u]ntrained/ unsafe handcuffing techniques."  (Id. at 2.)  Plaintiff states that he suffered head trauma and lesions on his wrist because of excessive force employed by Defendants Mendoza and Gutierrez.  (Id. at 2, 6.)  Additionally, Plaintiff alleges that during the meal hour, Defendant Mendoza Jr. used excessive force by throwing a lunch bag at Plaintiff, while he was asleep in his cell.  (Id. at 3.)

Plaintiff also claims that Defendants failed to protect him.  (See id. at 2, 4.) Specifically, Plaintiff contends that he was handcuffed and shackled while waiting for his court appearance at the Brawley Superior Court when three other unrestrained inmates in his cell assaulted him.  (See id. at 4, 6.)  Plaintiff alleges that although Defendant Hernandez could see the incident through the cell door's window slot, he failed to protect Plaintiff.  (Id. at 6.)  Additionally, Plaintiff claims that Defendants Soria and Castro failed to protect him from other inmates.  (See id. at 2, 4.)

Further, Plaintiff claims that Defendant Lizzarga deprived him of a meal when he placed the meal on the outside of Plaintiff's cell door's window slot, but closed the slot. (Id. at 3.)  Plaintiff also alleges that an unknown and unnamed officer forced him to undress while other female officers were present in the pod area.  (Id. at 6.)  Additionally, Plaintiff states that the officers refused to give him clean clothing until he was fully undressed.  (Id.)  Plaintiff claims that he was "body shamed" by the unnamed officers when he undressed in front of them.  (Id.)

Additionally, Plaintiff alleges that Defendants harassed him and discriminated against him.  (See id. at 3.)  Plaintiff asserts that Defendant Guzman was "rude,

unpleasant, and unprofessional" by "vulgarly discriminating" and insulting Plaintiff's gender.  (Id.)  Plaintiff also claims that Defendant Soto "harass[ed]" and "taunt[ed]" Plaintiff with unprofessional remarks and statements.  (Id.)  Additionally, Plaintiff alleges that Defendant Gutierrez harassed Plaintiff by stepping into his cell after Plaintiff requested no more contact or communication with Gutierrez.  (Id. at 5.)  Plaintiff states that after he asked Gutierrez to exit his cell, Gutierrez stated "it was his cell," "it was his jail," and that he "ran the jail."  (Id.)  Plaintiff further alleges that Gutierrez did not leave his cell until Plaintiff called for other guards.  (Id.)

Plaintiff also alleges that during his pretrial detention, he was provided "inadequate healthcare" and his medical needs were neglected.  (See id. at 3, 7.)  Plaintiff claims that he submitted several health requests because of his digestive system issues, but his needs were "disregarded."  (Id. at 7.)  Plaintiff states that, on one occasion, he experienced serious pain and requested to go to "911 emergency services," but his request was denied because the jail medical room was understaffed.  (Id.)  Plaintiff further claims that Defendant Muniga was "the officer present at the time," but "refused to contact medical services."  (Id. at 3, 7.)

Further, Plaintiff alleges that the overall conditions of the Imperial County Jail were unsanitary and inhumane because of feces and dried urine covering the cells, ventilation problems that caused heat exhaustion, and fruit flies and mosquitoes.  (Id. at 7.)  Plaintiff also claims that he did not receive a set of clean orange apparel for seventeen days after his incarceration, and that he received clean clothes every three days.  (Id.)  Plaintiff further states that he was not able to shower every day despite the jail's mandate that inmates exercise on a daily basis.  (Id.)

Additionally, Plaintiff alleges that officers impersonated other officers.  (See id. at 3.)  Specifically, Plaintiff claims that Defendants Guzman and Soto impersonated other officers by changing their uniform name plaques.  (Id.)

Plaintiff also alleges violations of his equal protection rights.  (Id. at 7.)  Plaintiff states that his equal protection rights were violated because his "booking reports consist

of errors," his "report location of arrest is incorrect," and his "government identification code is incorrect." (Id.)

Plaintiff further alleges that Defendant Lizzarga "depriv[ed]" him of a meal in retaliation. (See id. at 3, 6.) Plaintiff states that he requested a supervisor after questioning Lizzarga "regarding inmate neglect," and that later, during the meal hour, Lizzarga took Plaintiff's meal and closed his cell door's window slot to prevent Plaintiff from eating. (See id. at 6.) Plaintiff alleges that "every inmate" received their meal, but he had to wait for Lizzarga "to come back around" to give Plaintiff his meal, and claims that Lizzarga acted in retaliation. (See id. at 3, 6.)

### III. LEGAL STANDARD

**A.   Motion to Dismiss for Failure to State a Claim**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

A court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. See Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008). A court, however, is not

required to accept as true legal conclusions couched as factual allegations.  Iqbal, 556 U.S. at 678.  When resolving a motion to dismiss for failure to state a claim, a court considers the contents of the complaint and material properly submitted with it.  Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002); Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 (9th Cir. 1998) (internal citations and internal quotation marks omitted) ("Ordinarily, the face of the . . . complaint, and the exhibits attached thereto, would control the Rule 12(b)(6) inquiry.").

**B.   Standards Applicable to *Pro Se* Litigants**

When a plaintiff appears *pro se*, a court must liberally construe the pleadings.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).  The rule of liberal construction is "particularly important" in civil rights cases.  See Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010); Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).  When liberally construing a *pro se* civil rights complaint, a court is not permitted to "supply essential elements of the claim that were not initially pled."  Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim."  Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984) (citations and internal quotation marks omitted).

A court should allow a *pro se* litigant to amend his complaint, "unless the pleading 'could not possibly be cured by the allegation of other facts.'"  Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (quoting Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000)).  "[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively."  Ferdik, 963 F.2d at 1261.  A court "should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"  Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (quoting Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th

Cir. 2012)).  However, where an amendment of a *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate.  See James v. Giles, 221 F.3d 1074, 1077 (9th Cir. 2000).

**C.**   **Stating a Claim Under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must plausibly allege that (1) the acts of defendants (2) taken under color of state law (3) deprived him of his federal rights, privileges, or immunities and (4) caused him damage.  42 U.S.C. § 1983; Thornton v. City of St. Helens, 425 F.3d 1158, 1163–64 (9th Cir. 2005).  To prevail on a § 1983 claim, "a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of the defendant."  Harris v. Schriro, 652 F. Supp. 2d 1024, 1034 (D. Ariz. 2009) (citing Rizzo v. Goode, 423 U.S. 362, 371–72 (1976)).

## IV.  DISCUSSION

Defendants move the Court to dismiss Plaintiff's Amended Complaint without leave to amend.  (See Mot. Dismiss.)  They argue that Plaintiff fails to establish liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  (Id. at 8–10.) Defendants further contend that Plaintiff's Amended Complaint fails to adequately plead a Fourth Amendment claim, as well as his claim for violations under the Fourteenth Amendment.  (Id. at 10–17.)  Additionally, Defendants assert that Plaintiff cannot show that the deficiencies in his Amended Complaint "can be cured by amendment."  (Id. at 7.) Finally, Defendants state that Plaintiff's Opposition fails to address any of the legal arguments in Defendants' Motion to Dismiss and contains facts not pled in Plaintiff's Amended Complaint, and ask the Court to disregard those facts.  (Reply at 2–3.)

**A.**   **Facts Raised in Plaintiff's Opposition**

The Court initially addresses Defendants' argument that because Plaintiff's Opposition adds new facts that Plaintiff did not plead in his Amended Complaint, the Court should disregard those facts.  (See id. at 2; see also ECF No. 17.)  Having reviewed Plaintiff's Opposition, the Court notes that it generally restates facts from Plaintiff's

Amended Complaint, but also contains additional facts that were not alleged in the Amended Complaint.  (See Opp'n at 1–5.)

"In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."  Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (quoting Schneider, 151 F.3d at 1197 (9th Cir. 1998)); see also Turner v. Cnty. of San Diego, Case No.: 17cv285-WQH-MDD, 2017 WL 2908807, at *3 (S.D. Cal. July 7, 2017) ("[A] court cannot consider as allegations facts [p]laintiff asserts for the first time in his opposition.").  However, a court may consider "[f]acts raised for the first time in plaintiff's opposition papers . . . in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice."  Broam, 320 F.3d at 1026 n.2 (quoting Orion Tire Corp. v. Goodyear Tire & Rubber Co., 268 F.3d 1133, 1137–38 (9th Cir. 2001)).  As a result, although the Court cannot consider new facts listed in Plaintiff's Opposition in determining whether Plaintiff's Amended Complaint states a claim against Defendants, the Court will consider those facts in determining whether to grant leave to amend or to dismiss the Amended Complaint with or without prejudice. See id.

**B.** **Monell Municipal Liability**

Defendants argue that if Plaintiff is attempting to establish municipal liability under Monell, 436 U.S. at 690, his Amended Complaint fails to allege an official policy that amounted to a deliberate indifference of Plaintiff's rights.  (Mot. Dismiss at 8–10.) Defendants contend that Plaintiff fails to mention any official policy that amounted to a deliberate indifference of his rights, and merely references mandated inmate workouts without the ability to shower.  (Id. at 8–9.)  Defendants further argue that even if Plaintiff references a policy, he fails to establish how that policy is deficient, how it caused him harm, or that it amounted to a deliberate indifference.  (Id. at 9–10.)  Defendants also assert that Plaintiff fails to establish Monell liability related to his other causes of action

for the same reasons.  (Id. at 10.)  Plaintiff does not make any arguments regarding municipal liability in his Opposition.  (See Opp'n.)

Plaintiff's Amended Complaint names the Imperial County Sheriff's Department. (See Am. Compl.)  The Ninth Circuit has recently clarified that municipal police departments and sheriff's departments are "persons" within the meaning of 42 U.S.C. §1983, and are therefore proper defendants.  See Duarte v. City of Stockton, 60 F.4th 566, 574 (9th Cir. 2023); see also Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1138 (9th Cir. 2012) ("To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law.").  Therefore, the Imperial County Sheriff's Department is a "person" within the meaning of 42 U.S.C. § 1983, and a proper Defendant in this action.  See id.; see also Crossley v. Tulare Cnty. Sheriff, 1:21-cv-01758-GSA-PC, 2023 WL 3794868, at *4 (E.D. Cal. June 2, 2023) (citing Duarte, 60 F.4th at 574, and concluding that Tulare County Sheriff's Department was a proper defendant); Johnson v. Solano Cnty. Sherriff, No. 2:22-cv-02061-DAD-CKD PS, 2023 WL 2278409, at *4 (E.D. Cal. Feb. 28, 2023) (citing Duarte, 60 F.4th at 574, and concluding that Solano County Sheriff's Department was proper defendant).

A municipality or local government unit can be held liable under 42 U.S.C. § 1983 if the allegedly unconstitutional actions of its employees were taken pursuant to a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Monell, 436 U.S. at 690.  A municipality can also be liable for adopting an unconstitutional custom, even if such custom has not received formal approval through the "body's official decision-making channels."  Id. at 690–91.  However, a municipal entity cannot be held liable under 42 U.S.C. § 1983 simply because it employs someone who has allegedly acted unlawfully.  Id. at 691, 694.  A plaintiff must show that: (1) he was deprived of a constitutional right; (2) the municipality has a policy, custom or practice which amounted to deliberate indifference to that constitutional right; and (3) the policy, custom, or practice was the moving force behind the constitutional

violation.  <u>Dougherty v. City of Covina</u>, 654 F.3d 892, 900–01 (9th Cir. 2011) (citing <u>Monell</u>, 436 U.S. at 694).  A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  <u>Fogel v. Collins</u>, 531 F.3d 824, 834 (9th Cir. 2008).  A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law."  <u>St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988) (citation and internal quotation marks omitted).  "[P]roof of a single incident of unconstitutional activity" or even a series of "isolated or sporadic incidents" will not give rise to § 1983 municipal liability.  <u>Grant v. Cnty. of Los Angeles</u>, 772 F.3d 608, 618 (9th Cir. 2014).

In his Amended Complaint, Plaintiff appears to allege that the Imperial County Sheriff's Department mandates exercise, but does not allow inmates to shower every day.  (<u>See</u> Am. Compl. at 7.)  Plaintiff's Amended Complaint, however, does not allege that inmate exercise is part of any policy, custom, or practice by the Imperial County Sheriff's Department, or that it amounted to deliberate indifference to his constitutional rights.  <u>See</u> <u>Dougherty</u>, 654 F.3d at 900–01; <u>Monell</u>, 436 U.S. at 694.  Plaintiff also has not alleged that any policy, custom, or practice was the "moving force" behind the constitutional violation.  <u>See</u> <u>id.</u>  Plaintiff therefore has failed to allege a <u>Monell</u> claim against the Imperial County Sheriff's Department.

## C.   <u>Fourth Amendment Claims</u>

Plaintiff appears to allege in his Amended Complaint that Defendants violated his privacy rights.  (Am. Compl. at 2, 5.)  He also appears to assert that Defendants entered his cell without probable cause to conduct unwarranted searches.  (<u>Id.</u> at 3, 5.)

To the extent Plaintiff alleges that Defendants violated his privacy rights under the Fourth Amendment, "while persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or loss of many significant rights."  <u>Hudson v. Palmer</u>, 468 U.S. 517, 524 (1984) (citing <u>Bell v.</u>

Wolfish, 441 U.S. 520, 545 (1979)).  A prisoner has no reasonable expectation of privacy in his prison cell.  See Hudson, 468 U.S. at 527–28; see also Seaton v. Mayberg, 610 F.3d 530, 534 (9th Cir. 2010) (quoting Bell, 441 U.S. at 537) ("Loss of privacy is an 'inherent incident[] of confinement.'"); Mitchell v. Dupnik, 75 F.3d 517, 522 (9th Cir. 1996) ("An inmate ordinarily has no reasonable expectation of privacy as to his jail cell or his possessions within it.").  "A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order."  Hudson, 468 U.S. at 527–28; see also Bell, 441 U.S. at 546 (emphasis added) ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.").  Further, prisoners retain a very limited Fourth Amendment right to shield themselves from being observed nude.  See Michenfelder v. Sumner, 860 F.2d 328, 333–34 (9th Cir. 1988).  This right is not violated if guards only make casual observations of the prisoner or if the observations are made from a distance.  See id. at 334.

In this case, Plaintiff alleges that Defendant Torres, a female correctional officer, "acted as if she was going to enter" Plaintiff's cell while he was "half dressed," but then Torres stepped aside and Defendant Alvarez entered the cell.  (Am. Compl. at 5.) Plaintiff claims that Defendants Torres and Alvarez violated his privacy rights by coming within "close contact of [him]" while he was undressed.  (Id. at 2.)  Plaintiff's Amended Complaint allegations describe an isolated occurrence, during which Plaintiff was "half dressed," and a female officer Torres approached, but did not enter his cell.  (See id.) The Amended Complaint also alleges that Torres was accompanied by a male officer Alvarez, who entered Plaintiff's cell.  (See id.)  Plaintiff has not alleged that Torres's or Alvarez's actions were unreasonable or unprofessional, and, as currently pled, Plaintiff's Amended Complaint does not allege a Fourth Amendment violation of his privacy rights against Defendants Torres and Alvarez.  See Michenfelder, 860 F.2d at 334 ("We

recognize as legitimate both the interest in providing equal employment opportunities and the security interest in deploying available staff effectively"; also stating that "assigned positions of female guards that require only infrequent and casual observation, or observation at distance, and that are reasonably related to prison needs are not so degrading as to warrant court interference."); see also Kamali v. Stevens, 1:19-cv-01432-NONE-GSA-PC, 2021 WL 3140479, at *6 (E.D. Cal. July 26, 2021) (finding that plaintiff failed to state a cognizable claim for invasion of bodily privacy in violation of the Fourth Amendment, where the plaintiff alleged that by having to walk naked roughly 40–50 feet to the C-yard patio to wash himself with a garden hose he was forced to expose himself to females and other inmates; reasoning, in relevant part, that that plaintiff's "allegations [we]re limited to a single incident").

Additionally, Plaintiff alleges that Defendants Castro and Soria "wrongfully touched" him for a "dress code violat[ion]" when he was held at the Brawley Superior Court, in violation of his Fourth Amendment rights.  (See Am. Compl. at 2.)  Plaintiff's Amended Complaint also contains allegations that Defendant Gutierrez violated his privacy rights, when Gutierrez entered Plaintiff's cell to deliver a meal, despite Plaintiff's request that Gutierrez "keep his distance," step out, and "stop communicating or [m]aking contact [with] [P]laintiff."  (See id. at 2, 5.)  Plaintiff's Amended Complaint does not provide any further facts to support his claims that Defendants Castro, Soria, and Gutierrez violated his Fourth Amendment rights.  Plaintiff's vague and conclusory allegations in the Amended Complaint are not sufficient to state a plausible Fourth Amendment claim.  See Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); United States v. Van Poyck, 77 F.3d 285, 290 (9th Cir. 1996) (quoting New York v. Class, 475 U.S. 106, 112 (1986)) ("The Fourth Amendment is not triggered unless the state intrudes into an area 'in which there is a constitutionally protected reasonable expectation of privacy.'"); see also Haraszewski v. Brannan, No. 10cv0546–LAB (PCL), 2011 WL

4569075, at *2 (S.D. Cal. Sept. 30, 2011) (concluding that a pretrial detainee "could not reasonably have expected his cell and its contents to remain private.").

Further, to the extent Plaintiff alleges that Defendants searched his cell without probable cause, "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Hudson, 468 U.S. at 526. "Random searches of inmates, individually or collectively, and their cells" are "necessary to ensure the security of the institution and the safety of inmates and all others within its boundaries." Id. at 529. To the extent that pretrial detainees retain Fourth Amendment rights upon incarceration, those constitutional rights prohibit "only unreasonable searches." Id. at 558. In determining the reasonableness of a search, courts consider the following factors: (1) the scope of the particular intrusion, (2) the manner in which the search is conducted, (3) the justification for initiating the search, and (4) the place in which the search is conducted. Byrd v. Maricopa Cnty. Sheriff's Dep't, 629 F.3d 1135, 1141 (9th Cir. 2011). Whether a "search is reasonable under the Fourth Amendment requires a case-by-case 'balancing of the need for the particular search against the invasion of personal rights that the search entails.'" Id. (quoting Bell, 441 U.S. at 559).

In this case, Plaintiff alleges that Defendant Soto conducted unwarranted searches to intimidate Plaintiff, and "look[ed] to fight" Plaintiff by opening his cell door. (Am. Compl. at 3.) Plaintiff's Amended Complaint is devoid of any additional factual allegations regarding the search. See Byrd, 629 F.3d at 1141 (providing that the following factors are considered in assessing the reasonableness of a search: (1) the scope of the particular intrusion, (2) the manner in which the search is conducted, (3) the justification for initiating the search, and (4) the place in which the search is conducted). Under these facts, Plaintiff has not alleged that Defendant Soto violated his Fourth Amendment rights. See Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570 ("[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"); see also United States v. Brice, 584 F. App'x 753 (9th Cir. 2014) (finding that an inmate did not have reasonable

23cv5-LR

expectation of privacy in his cell, and that a warrantless search of the inmate's cell did not violate his Fourth Amendment rights); <u>Myron v. Terhune</u>, 225 F. App'x 434, 438 (9th Cir. 2007) (quoting <u>Hudson</u>, 468 U.S. at 537) (finding that plaintiff's claim that his cell was searched without a warrant was "frivolous," because "the Fourth Amendment is not applicable to a prison cell").

**D.   <u>Fourteenth Amendment Claims</u>**

Plaintiff's Amended Complaint appears to allege that Defendants violated his Fourteenth Amendment rights by (1) failing to protect him from violence and using excessive force, (2) providing inadequate medical care, (3) providing inadequate conditions of confinement, (4) violating his bodily privacy rights, and (5) violating his equal protection rights.  (<u>See</u> Am. Compl. at 2–7.)  The Fourteenth Amendment "prohibits *all* punishment of *pretrial detainees*."  <u>Norbert v. City & Cnty. of S.F.</u>, 10 F.4th 918, 928 (9th Cir. 2021) (quoting <u>Vazquez v. Cnty. of Kern</u>, 949 F.3d 1153, 1163–64 (9th Cir. 2020)).  For a "particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee."  <u>Id.</u> (quoting <u>Demery v. Arpaio</u>, 378 F.3d 1020, 1029 (9th Cir. 2004)).  "Harm" under the first prong must "significantly exceed, or be independent of, the inherent discomforts of confinement."  <u>Demery</u>, 378 F.3d at 1030 (citing <u>Bell</u>, 441 U.S. at 537).

**1.  Failure to protect/excessive force**

To the extent Plaintiff is alleging in his Amended Complaint that Defendants failed to protect him from violence during his pretrial detention, the elements of a Fourteenth Amendment failure-to-protect claim against an individual officer are:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;

23cv5-LR

(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

(4) By not taking such measures, the defendant caused the plaintiff's injuries.

Castro, 833 F.3d at 1071.  To satisfy the third element, "defendant's conduct must be objectively unreasonable."  Id. (quoting Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015)).

Plaintiff alleges in his Amended Complaint that he was assaulted by three unrestrained inmates while he was handcuffed at the Brawley Superior Court, and that Defendant Hernandez "failed to act" or contain the inmates, even though he could see the incident.  (See Am Compl. at 6.)  Plaintiff also claims that Defendants Soria and Castro "failed to protect" him.  (See id. at 2.)  Although Plaintiff's Amended Complaint alleges that Defendants Hernandez, Soria and Castro failed to protect him from inmate attack while Plaintiff was awaiting a court appearance at the Brawley Superior Court, (see id. at 2, 6), the Amended Complaint does not allege that those Defendants were aware that the unrestrained inmates might attack Plaintiff, yet made an intentional decision to place Plaintiff in the cell with those inmates.  See Castro, 833 F.3d at 1071.  Further, the Amended Complaint fails to sufficiently allege facts showing that by being temporarily placed in the cell with other inmates at the Brawley Superior Court, Plaintiff was subjected to a substantial risk of suffering serious harm, that Defendants Hernandez, Soria and Castro failed to take reasonable steps to abate that risk, that a reasonable deputy in Defendants' position would have appreciated a high risk of harm under the circumstances, and that by not taking such measures, Defendants caused Plaintiff's injuries.  See id.; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework for a complaint, they must be supported by factual allegations."); M.D. v. Cnty. of San Bernardino, Case No. 5:22-cv-1357-SP, 2023 WL 2342338, at *5 (C.D. Cal.

23cv5-LR

Feb. 27, 2023) (dismissing plaintiffs' claim that defendants failed to protect a deceased inmate from his cell-mate, where plaintiffs claimed that "defendants knew or should have known that decedent's cell-mate would attack him, but allege[d] no facts to support that claim."). Accordingly, Plaintiff's conclusory allegations in his Amended Complaint fail to state a cognizable Fourteenth Amendment claim against Defendants Hernandez, Soria and Castro for failure to protect Plaintiff.

To the extent Plaintiff alleges that Defendants violated his Fourteenth Amendment rights by using excessive force, "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." Kingsley, 576 U.S. at 397–98 (quoting Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)). To state an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Id. at 396–97. Objective reasonableness turns on the "facts and circumstances of the particular case." See id. at 397 (quoting Graham, 490 U.S. at 396). A court must consider "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in th[e] judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." Id. (quoting Bell, 441 U.S. at 540, 547 (internal quotation marks omitted)). Relevant considerations also include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id. at 397.

In this case, Plaintiff alleges that after he had been assaulted at the Brawley Superior Court, Defendants Mendoza and Gutierrez grabbed him, forcefully "pushed pinched" him, and "force[d]" him into another pod cell. (See Am. Compl. at 6.) Plaintiff further claims that Defendant Mendoza "pull[ed] and yank[ed]" Plaintiff's chain shackles, and used "untrained" and "unsafe handcuffing techniques." (See id.) Plaintiff

also alleges that he suffered head trauma and lesions on his wrist.  (See id. at 2, 6.)
Although Plaintiff alleges, in a conclusory manner, that Defendants Mendoza and
Gutierrez used excessive force, he also alleges that there had been a fight with several
inmates, which had preceded Defendants' alleged use of force.  (See id. at 6.)  Plaintiff's
Amended Complaint does not allege whether Defendants provided any reasons for their
actions and whether they engaged in other conduct to defuse the use of force.  Most
importantly, the Amended Complaint also does not state that Defendants' actions were
objectively unreasonable in light of the surrounding facts and circumstances.  See
Kingsley, 576 U.S. 396–97 (providing that to state a claim, a pretrial detainee is required
to show that "the force purposely or knowingly used against him was objectively
unreasonable"); id. at 398 (stating that a pretrial detainee can prevail on an excessive
force claim by providing "objective evidence that the challenged governmental action is
not rationally related to a legitimate governmental objective or that is excessive in
relation to that purpose"); see also Plunk v. Tulare Cnty., Case No.: 1:15-cv-01820-
SAB(PC), 2016 WL 8731360, at *3 (E.D. Cal. Feb. 5, 2016) (dismissing plaintiff's
excessive force claim under the Fourteenth Amendment where plaintiff's complaint
"d[id] not explain what led to the incident [at issue], where the incident took place, what
if any reasons were given by defendants for their actions, whether defendants engaged in
other conduct to defuse the use of force, or why [p]laintiff believe[d] the use of force was
objectively unreasonable.").  For the foregoing reasons, Plaintiff's allegations in the
Amended Complaint are not sufficient to state a cognizable claim against Defendants
Mendoza and Gutierrez for excessive force.

### 2.  Inadequate medical care

To the extent Plaintiff is alleging that Defendants failed to provide adequate
medical care, "claims for violations of the right to adequate medical care 'brought by
pretrial detainees against individual defendants under the Fourteenth Amendment' must
be evaluated under an objective deliberate indifference standard."  Gordon v. Cnty. of
Orange, 888 F.3d 1118, 1124–25 (9th Cir. 2018) (emphasis added) (quoting Castro,

833F.3d at 1070)).  In <u>Gordon</u>, the Ninth Circuit identified the following elements of a pretrial detainee's medical care claim against an individual defendant under the Due Process Clause of the Fourteenth Amendment:

> (i) the defendant made an intentional decision with respect to the conditions under which [plaintiff] was confined; (ii) those conditions put [plaintiff] at substantial risk of suffering serious harm; (iii) [each] defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, [each] defendant caused [plaintiff's] injuries.

<u>Id.</u> at 1125.

Plaintiff alleges in his Amended Complaint that during his pretrial detention, he was provided "inadequate healthcare."  (<u>See</u> Am. Compl. at 7.)  He claims that he suffered from a history of "bad bowel movement w/ internal black discharge" and experienced "digestive system issues," and that he "submitted several health request reports" because of his digestive issues, but his "medical needs were disregarded."  (<u>See id.</u>)  Plaintiff also alleges that, on one occasion, he experienced serious pain and "requested to go to 911 emergency services," but was refused.  (<u>Id.</u>)  Additionally, Plaintiff generally claims that the jail's medical room was understaffed and that Defendant Muniga "was the officer present at the time who refused to contact medical services" to "provide [Plaintiff] with emergency medical care."  (<u>See id.</u> at 3, 7.)  Although Plaintiff alleges that he experienced "digestive system issues," (<u>see id.</u> at 7), he doesn't claim that Defendant Muniga knew of those issues, yet "made an intentional decision" to expose Plaintiff to a "substantial risk of suffering serious harm."  <u>See Gordon</u>, 888 F.3d at 1125.  Further, Plaintiff does not allege that a reasonable officer in Muniga's position "would have appreciated [a] high degree of risk involved."  <u>See id.</u>  Plaintiff also does not allege any facts to plausibly suggest that Muniga's actions or refusal to act caused Plaintiff to be injured.  <u>See id.</u>  Notably, the Amended Complaint does not specify what injury Plaintiff suffered.  (<u>See</u> Am. Compl.)

1    Additionally, although Plaintiff generally alleges that on unspecified dates, he

2  "submitted several health request reports" regarding his "digestive issues," (see id. at 7),

3  there are no factual allegations in his Amended Complaint identifying who those requests

4  were directed to or any other facts plausibly alleging that any individual Defendant was

5  aware of his medical needs.  See Gordon, 888 F.3d at 1125; see also Mayfield v. Craven,

6  433 F.2d 873, 874 (9th Cir. 1970) ("[A] difference of opinion between a prisoner patient

7  and prison medical authorities as to what treatment is proper and necessary does not give

8  rise to a claim under [§ 1983].");  Burns v. San Diego Cnty. Sheriff's Dep't, Case No.: 22-

9  CV-372 JLS (MDD), 2022 WL 1570999, at *5 (S.D. Cal. May 18, 2022) ("Allegations of

10 differences of opinion over proper medical care, inadequate medical treatment, medical

11 malpractice, or even gross negligence by themselves do not rise to the level of . . .

12 Fourteenth Amendment violation.");  Swanson v. Cnty. of Contra Costa, Case No. 21-cv-

13 06419-JST, 2023 WL 6391472, at *6 (N.D. Cal. Sept. 29, 2023) (finding that pretrial

14 detainee's claims that jail officials "fail[ed] to check [his] vitals or offer him fluids," were

15 insufficient to "put medical staff on notice of [p]laintiff's ulcerative colitis," and granting

16 defendants' motion to dismiss plaintiff's Fourteenth Amendment claim for inadequate

17 medical care).  Plaintiff's assertions in the Amended Complaint are too vague and

18 conclusory to state a claim for a constitutional violation against Defendant Muniga for

19 failure to provide adequate medical care.  Based on these facts, the Court finds that the

20 Amended Complaint does not state a claim for denial of medical care in violation of

21 Plaintiff's Fourteenth Amendment Due Process rights.

22     **3.  Conditions of confinement**

23     To the extent Plaintiff is attempting to allege that Defendants violated his

24 Fourteenth Amendment rights by providing inadequate conditions of confinement, to

25 state a claim for unconstitutional conditions of confinement, a pre-trial detainee must

26 plausibly allege that:

27     (i) the defendant made an intentional decision with respect to the conditions
       under which the plaintiff was confined; (ii) those conditions put the plaintiff

28

1
2
3
4
5

at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

6
7
8
9

Gordon, 888 F.3d at 1125 (quoting Castro, 833 F.3d at 1071); see also Carroll v. San Diego Cnty. Jail Sheriff, Case No.: 3:19-cv-02073-AJB-NLS, 2020 WL 4336091, at *6–7 (S.D. Cal. July 28, 2020) (stating that the Ninth Circuit's reasoning in Gordon applies to conditions of confinement claims).

10
11
12
13
14
15
16
17
18
19
20

"The Constitution 'does not mandate comfortable prisons.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). "Conditions of confinement may, consistent with the Constitution, be restrictive and harsh." Uhuru v. Benavidez, Case No. 2:22-CV-0784-TLN-DMC-P, 2023 WL 5280132, at *7 (E.D. Cal. Aug. 16, 2023) (citing Rhodes, 452 U.S. at 347; Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v. Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc)). However, some conditions of confinement may establish a constitutional violation "when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304 (1991).

21
22
23
24
25
26
27
28

In this case, Plaintiff's Amended Complaint alleges that the conditions of the Imperial County Jail, where Plaintiff was housed during his pretrial detention, were unsanitary and inhumane, because the cells contained feces and dried urine, fruit flies, and mosquitoes, and there was inadequate ventilation and poor air quality.  (See Am. Compl. at 7.)  Plaintiff also claims that he experienced delays in receiving clean clothing, could not shower regularly, and was "told to wear his orange jail apparel on top of his undershirt," which he alleges was "unsanit[a]ry." (Id.)  Additionally, Plaintiff claims that Defendants Guzman and Soto impersonated other officers by changing their uniform

name plaques; and Defendant Guzman insulted, taunted, and made "unprofessional remarks/statements" toward Plaintiff.  (See id. at 3, 7.)

The Amended Complaint does not plausibly allege that any named Defendant was responsible for, or aware of, the conditions in the cells where Plaintiff was housed, or that he was receiving clean clothing with delays.  Further, the allegations in the Amended Complaint lack detail regarding their duration and severity, or how those conditions affected Plaintiff.  Additionally, Plaintiff does not allege that any named Defendant made an intentional decision to place him in a cell with the alleged conditions or to delay his access to clean clothing, nor explains how Defendants subjected him to a substantial risk of serious harm.  See Gordon, 888 F.3d at 1125.  The Amended Complaint also does not allege that any Defendant failed to take reasonable available measures to abate any alleged risk to Plaintiff, and that by not taking such measures, each Defendant caused Plaintiff's injuries.  See id.  Likewise, Plaintiff's Amended Complaint does not allege facts sufficient to describe how Defendants' Guzman's and Soto's "impersonation" and "insults" violated his constitutional rights.  See Somers v. Thurman, 109 F.3d 614, 622 (9th Cir. 1997) ("We are mindful of the realities of prison life, and while we do not approve, we are 'fully aware that the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons'"; finding that plaintiff did not allege a constitutional violation where he did not allege that guards intended to humiliate him).

Plaintiff's Amended Complaint therefore fails to allege sufficient facts to establish that he was subjected to conditions of confinement that rise to the level of a constitutional violation.  See Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) ("The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred."); see also Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570 ("[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").  Accordingly, the Court finds that Plaintiff's Amended

Complaint does not state a claim that Defendants violated his Fourteenth Amendment right by providing inadequate conditions of confinement.

### 4. Bodily privacy

Plaintiff may also be attempting to allege a violation of his Fourteenth Amendment bodily privacy rights by alleging that an unknown and unnamed officer forced him to undress while other female officers were present in the pod area.  (See Am. Compl. at 6.) "[T]he Fourteenth Amendment protects a sphere of privacy, and the most 'basic subject of privacy . . . the naked body.'"  Vazquez, 949 F.3d at 1165 (citation omitted). "Generally, the right does not apply where observation of a pretrial detainee's naked body is 'only infrequent and casual' or 'at [a] distance,' and it is 'reasonably related to prison needs.'"  James v. Lee, 485 F. Supp. 3d 1241, 1258 (S.D. Cal. 2020) (quoting Michenfelder, 860 F.2d at 334).

Plaintiff's Amended Complaint neither identifies any specific Defendant nor alleges any additional facts surrounding the circumstances of the incident.  As currently pled, such vague and conclusory allegations are not sufficient to allege Fourteenth Amendment violations of bodily privacy rights.  See id.

### 5. Equal protection

The Amended Complaint may also be attempting to allege violations of Plaintiff's rights to equal protection.  (See Am. Compl. at 7.)  The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013).  Further, an equal protection claim may be established by showing that similarly situated individuals were intentionally treated differently without a rational

basis for the difference in treatment.  Engquist v. Oregon Dept. of Agriculture, 553 U.S. 591, 601–02 (2008); see also SmileDirectClub, LLC v. Tippins, 31 F.4th 1110, 1122–23 (9th Cir. 2022) (citation omitted) ("To plead a class-of-one equal protection claim, [plaintiffs] must allege facts showing that they have been "[1] intentionally [2] treated differently from others similarly situated and that [3] there is no rational basis for the difference in treatment.").

In his Amended Complaint, Plaintiff states that his equal protection rights were violated because his "booking reports consist of errors," his "report location of arrest is incorrect," and his "government identification code is incorrect."  (Am. Compl. at 7.) Other than generally alleging that his booking report contained errors, Plaintiff's Amended Complaint does not allege any facts that Plaintiff is included in any identifiable group or "suspect class," or that he is being intentionally discriminated against on the basis of his membership in a protected class.  See Furnace, 705 F.3d at 1030; see also United States v. Whitlock, 639 F.3d 935, 941 (9th Cir. 2011) (quoting Glauner v. Miller, 184 F.3d 1053, 1054 (9th Cir. 1999) (stating that "neither prisoners nor 'persons convicted of crimes' constitute a suspect class for equal protection purposes").  The Amended Complaint also does not allege that Plaintiff is being intentionally treated differently than other similarly situated inmates or individuals without a rational basis for the difference in treatment.  See Engquist, 553 U.S. at 601–02; SmileDirectClub, 31 F.4th at 1122–23.  Plaintiff's allegations in the Amended Complaint are too speculative and conclusory to satisfy the pleading requirements.  (See Am Compl. at 7); see also Ashcroft, 556 U.S. at 679 (holding that conclusions must be supported by factual allegations); Clegg v. Cult Awareness Network, 18 F.3d 752, 754–55 (9th Cir. 1994) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.").  Accordingly, to the extent Plaintiff is attempting to allege violations of his Fourteenth Amendment right to equal protection, the Amended Complaint fails to state a claim.  See id.; see also Mascorro v. City of San Diego, Case No.: 21-cv-1427-RSH-DDL, 2023 WL

8115528, at *13 (S.D. Cal. Nov. 22, 2023) (dismissing plaintiff's equal protection claim, where the plaintiff alleged that defendants "intentionally misinterpret[ed] and arbitrarily enforc[ed] laws for a malicious purpose"; reasoning that "[t]hese bare allegations [we]re insufficient to plausibly state an equal protection claim."); <u>Adams v. Arab</u>, Case No. 10cv706-MMA (BLM), 2011 WL 13100736, at *9 (S.D. Cal. Oct. 24, 2011) (recommending that plaintiff's equal protection claims be dismissed, where the plaintiff did not allege that he was included in an identifiable group or "suspect class," or that he was he was treated differently than any other similarly-situated prisoners or individuals), <u>report and recommendation adopted</u>, 2012 WL 12845612, at *1 (S.D. Cal. Jan. 23, 2012).

**E.   First Amendment Retaliation Claim**

Plaintiff's Amended Complaint also appears to allege that Defendant Lizzarga delayed providing a meal to Plaintiff in retaliation.  (<u>See</u> Am. Compl. at 3, 6.)  Pretrial detainees have a constitutional right to file grievances against prison officials and to be free from retaliation for doing so.  <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009)).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567–68 (2005).  "The adverse action need not be an independent constitutional violation."  <u>Id.</u> (citing <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995)); <u>see also</u> <u>Gomez v. Vernon</u>, 255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights.").  A plaintiff, however, must allege a retaliatory motive—that is, a causal connection between the adverse action and his protected conduct.  <u>Watison</u>, 668 F.3d at 1114.

Plaintiff alleges in his Amended Complaint that Defendant Lizzarga retaliated by "depriving" Plaintiff of a meal after Plaintiff questioned Lizzarga "regarding inmate

neglect" and "requested a supervisor." (Am. Compl. at 3, 6.) Plaintiff states that Lizzarga placed the meal on the outside of Plaintiff's cell door's window slot, but closed the slot, and Plaintiff had to wait for Lizzarga "to come back around" after he served meals to other inmates to give Plaintiff his meal. (See id.) Although Plaintiff alleges that he was "deprived" of a meal, he also alleges that the meal at issue was eventually delivered to him, although with some delay. (See id.) Further, the Amended Complaint does not allege that Plaintiff's First Amendment rights were chilled or that Defendant Lizzarga's actions did not reasonably advance a legitimate correctional goal. (See Am. Compl.) Accordingly, Plaintiff fails to allege the elements of a First Amendment retaliation claim and fails to state a retaliation claim against Defendant Lizzarga. See Rhodes, 408 F.3d at 567–68; see also Hentz v. Ceniga, 402 F. App'x 214, 215 (9th Cir. 2010) (holding that conclusory allegations of retaliation are insufficient to state a claim).

## F.   <u>Leave to Amend</u>

Plaintiff's claims of <u>Monell</u> municipal liability, Fourteenth Amendment violations for failing to protect Plaintiff from violence, using excessive force, providing inadequate medical care, providing inadequate conditions of confinement, and First Amendment retaliation are **DISMISSED with prejudice**, because Plaintiff has previously been granted leave to amend these claims, but has not been able to correct the deficiencies. <u>See</u> Fed. R. Civ. P. 8(a) (A pleading must contain: "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends," and "(2) a short and plain statement of the claim showing that the pleader is entitled to relief."); <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (noting that a court may deny leave to amend upon "repeated failure to cure deficiencies by amendments previously allowed"); <u>Nevijel v. North Coast Life Ins. Co.</u>, 651 F.2d 671, 673 (9th Cir. 1981) (providing that a complaint that fails to comply with Federal Rule of Civil procedure 8(a) after plaintiff has been given an opportunity to amend, may be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(b)).

1   However, because it is not clear that Plaintiff cannot allege facts to support his

2   Fourth Amendment claim, as well as Fourteenth Amendment claim for violations of his

3   bodily privacy rights and equal protection, the Court **DISMISSES** those claims **without**

4   **prejudice** and **GRANTS** Plaintiff leave to amend his pleading.  See Ramirez, 334 F.3d at

5   861 (court must grant a *pro se* plaintiff leave to amend his complaint "unless the pleading

6   'could not possibly be cured by the allegation of other facts'") (quoting Lopez, 203 F.3d

7   at 1130); Ferdik, 963 F.2d at 1261 ("[B]efore dismissing a pro se complaint the district

8   court must provide the litigant with notice of the deficiencies in his complaint in order to

9   ensure that the litigant uses the opportunity to amend effectively.").

## V.  CONCLUSION

11   For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss

12   and **DISMISSES** Plaintiff's Amended Complaint for failing to state a claim upon which

13   relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court

14   **DISMISSES with prejudice** Plaintiff's claims of Monell municipal liability, Fourteenth

15   Amendment violations for failing to protect Plaintiff from violence, using excessive

16   force, providing inadequate medical care, providing inadequate conditions of

17   confinement, and First Amendment retaliation.  The **Court DISMISSES without**

18   **prejudice** Plaintiff's claims of Fourth Amendment violations and Fourteenth

19   Amendment claim for violations of his bodily privacy rights and equal protection.  The

20   Court **GRANTS** Plaintiff leave to file a Second Amended Complaint limited to curing

21   the noted deficiencies concerning Plaintiff's allegations of: (1) Fourth Amendment

22   violations, (2) Fourteenth Amendment claim for violations of his bodily privacy rights,

23   and (3) Fourteenth Amendment claim for violations of his equal protection rights.

24   If Plaintiff chooses to file a Second Amended Complaint, the Second Amended

25   complaint must be complete by itself without reference to Plaintiff's Amended

26   Complaint.  The Second Amended Complaint must include the caption and civil case

27   number used in this order, Case No. 23cv5-LR and the words "SECOND AMENDED

COMPLAINT" on the first page.  If using the court form complaint, Plaintiff must answer all the questions on the form in order for the action to proceed.

In the Second Amended Complaint, Plaintiff must describe the constitutional right he believes was violated, name the person who violated the right, state exactly what that individual did or failed to do, state how the action or inaction of that person is connected to the violation of Plaintiff's constitutional rights, as well as what specific injury Plaintiff suffered because of that person's conduct.  See Hinkley v. Vail, No. C12–5969 RBL/ KLS, 2012 WL 6012800, at *2 (W.D. Wash. Dec. 3, 2012); see also Harris, 652 F. Supp. 2d at 1034 (to prevail on a § 1983 claim, "a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of the defendant.").  Plaintiff must repeat this process for each person he names as a defendant.  Plaintiff should carefully review the standards set forth in this order and amend only those claims that he believes, in good faith, are cognizable.

Any defendants not named and claims not re-alleged in Plaintiff's Second Amended Complaint will be considered waived.  See S.D. Cal. CivLR 15.1; Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1546 (9th Cir. 1989) (providing that "an amended pleading supersedes the original"); Lacey v. Maricopa Cnty., 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be considered "waived if not repled").  Plaintiff may not re-allege the claims or re-name the defendants that the Court has dismissed with prejudice.

The Second Amended Complaint must be filed on or before **July 12, 2024**.  If Plaintiff fails to file a Second Amended Complaint within the time provided, the Court will enter a final order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted and his failure to prosecute in compliance with a court order requiring amendment.  See Lira v. Herrera, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a

1  district court may convert the dismissal of the complaint into dismissal of the entire
2  action.").

3       **Additionally, the parties are reminded that they should not write letters to the**
4  **judges assigned to the case, or otherwise communicate with the judges assigned to**
5  **the case unless opposing counsel is notified of such communications.  All matters to**
6  **be called to a judge's attention should either be mailed or hand delivered to the**
7  **Clerk's Office in San Diego or El Centro, and must be sent to the opposing side.  See**
8  **Civil Local Rule 83.9.  E-mail communication with a judge's chambers to submit a**
9  **filing is not permitted under any circumstance.**

10       **IT IS SO ORDERED.**

11  Dated:  May 30, 2024

12

13

14  _____
15  Honorable Lupe Rodriguez, Jr.
    United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28